# 722-15

The Court of Criminal Appeals
of Texas

ORIGINAL

| Raul Villegas Garza | § | No. PD-0722-15 |
|---|---|---|
| Appellant | § | **RECEIVED IN**<br>COURT OF CRIMINAL APPEALS |
| V. | § | |
| The State of Texas | § | NOV 09 2015 |

Abel Acosta, Clerk

PETITION FOR DISCRETIONARY REVIEW

COMES NOW, RAUL VILLEGAS GARZA, to this Honorable Court of Appeals of Texas, Fort Worth, Court of Appeals No. 02-14-00206-CR, Trial Court No. CR-12706, Court of Appeals Erred on the following:

1. Background facts in paragraph four (4)

Investigator Robert Young intentionally turned off the audiotape, therefore no one could hear Young coerced the Appellant in giving a false confession to keep the Appellant's five trial transcripts.

Paragraph 5: The Appellant was never asked to initial the Miranda on the consent to search and seize form.

The Hood County Investigator Robert Young had NO WARRANT to SEARCH or to SEIZE the Appellants's personal and legal files.

This was not a Texas Department Criminal Justice shake down, T.D.C.J. was not the one who ordered the Appellant's files. This was not to further institutional security.

2. Motion to Suppress:

The State investigator Robert Young had no search and Seize Warrant when he removed all the Appellant's personal and legal files. Young told Appellant that he did not need a warrant. All he needed to do is have TDCJ remove me. And if I wanted to keep the five trial transcripts, just give him a confession. The Appellant never saw the consent to search form until 3 weeks before trial.

3. Again the State and the Court of Appeals ERRED:

A prisoner has no expectation of privacy in his cell when it comes to search by TDCJ. TDCJ is not allowed to read or remove a prisoner's legal files unless TDCJ's officers find contraband therefore the Fourth Amendment does not apply in this case.

-1-

BUT, on March 4, 2013 Hood County Investigator came into Michael Unit and "Ordered" TDCJ to go to the Appellant's cell and remove all Appellant's personal and legal files without having a warrant.

Therefore, under that condition the Appellant did have a expectation of privacy in the place searched and having his files seized by investigator Yount without a warrant.

U.S. V. Cohen, 796 F2d 20, (22)-(24)(2dCir. 1986)(4th Amendment Violation because purpose of warrantless search was to uncover criminal evidence and NOT TO FURTHER INSTITUTIONAL SECURITY.")

4. Again the Search and Seize of Appellant's files was NOT prison related:

The Court of Appeal ERRED because this search and seize was NOT for TDCJ, NOR was it a random cell search and it was NOT a TDCJ;s shake down. The Appellant does have 4th Amendment covering. See Cohen, 796 F2d 20, (22)-(24)(2d Cir. 1986).

See State V. Granville, 423 S.W. 3d at 404-405 (Tex. Crim. App. 2014) The Court of Appeals has found that the 4th AMendment does Apply and that incarcerated people have an expectation of pivacy in their personal property.... And that there was neither a warrant in support....

See Wolff V. McDonnell, 418 U.S. 539, 555-56, 94 S.CT. 2963,41 L. Ed. 2d 935 (1974) "...But, though his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the constitution and the prisons of this country." See also Walter V. United States, 477 U.S. 649,651, 100 S.CT. 2395, 65 L Ed. 2d 410 (1980).

The Court of Appeals could not have heard about the investigator Young coerceing the Appellant after he intentionally turned off the audiotape.

Trial record clearly show that the Appellant did not sign the consent to search for. Exhibits 1 & 2.

Trial records also clearly show that the Appellant was dealing with a basic Judge.

SUFFICIENCY OF THE EVIDENCE "THE COURT OF APPEALS ERRED".

The Appellant was found NOT guilty of the following:

A. Intending to deceive,
B. Knowing that or in connection with a official proceeding,

C. Or using false statement that was material,

D. Filing of an application for a Writ of Habeas Corpus in the 355th Judicial District Court (sixth).

E. False facts contained in affidavits

F. And for offering the affidavits by the Appellant, (Defendant).

All of this is in Count One of the indictment which the Appellant was found NOT guilty.

Trial record clearly show that the Factfinder did not understand the indictment.

A. Deos Mr. Garza have to have knowledge that the application was filed?

B. Can you give us the "definition" to the word to-wit?

The factfinders DID-NOT understand the phrase "to-wit" indicating that they did not understand the indictment.

Court of Appeals must presume that the factfinder resolved any confliction. Their conflict is they did not know what a word meant. How could they understand the indictment?

Court of Appeals ERRED when the indictment has two crimes in one count.

Count two, the lower Court ERRED when they put count one with count two. (Indictment enclosed) Exhibit 3.

Court of Appeals ERRED on the elements of tampering with or fabricating physical evidenc. Tex Penal Code Ann. 37.09 (A)(2).

Waldrop V. State, 219 S.W. 3d 531,535 (Tex. App. Texarkana 2007, No. Pet.) Section 37.09 (2)....[§] To read into the Statute that an Actor would have to turn over falsified evidence directly to each agency..."

Brosky V. State, 915 S.W. 2d 120,144 (Tex.App.-Fort Worth 1996, Pet. Ref'd). "[F] or a person's actions to fall within.... §3709, a separate criminal offense must already have been committed; otherwise the Actor would not know that an investigation ....is pending."

The factfinder found the Appellant NOT guilty of a criminal offense in count one and count two (A). Therefore, the Appellant did not know that an investigation was pending or a crime had been done.

According to Art. 38.04 Jury are the Judges of facts but they didn't understand the wording in the Indictment then they can't bring a clear and understanding verdict.

ART. 21.24 Joinder of Certain Offenses:

(A)....Each offesne stated in a separate count, if the offense arise out of the same criminal episode, as defined in chapter 3 of the Penal Code.

(B).... No paragraph may charge more than one offense.

Court of Appeals ERRED by knowing that Appellant was found NOT guilty of knowing that an investigation or Official Proceeding was pending which is in count one and two..

The only way for the Appellant to be found guilty is if the factfinder had found the Appellant guilty to count one.

The State had no evidence to prove that the Appellant presented or used the false Affidavits.

John Pizer made both affidavits and according to Det. Fernando Galvez #5885 Mr. John Pizer told him Det. Kashavage #7284 and Det. Garza #8989 from the Phoenix P.D. on May 30th 2013. Exhibit 4.

Pizer told them in paragraph 9, Dr. Hezmall recently responded back with a affidavit and Priscilla responded back with a Affidavit. Not one time did Mr. Pizer tell these Det. that the Appellant sent Pizer those false Affidavits. The Factfinder did not understand the wording in the Indictment.

Court of Appeal ERRED. The Appellant did not know that Pizer had filed the sixth Application until March 4, 2013. Yes when the Appellant received a copy, he tried to make sure it was not filed, because it was on the wrong form. Trial record proves this.

Appellant was coerced and under duress. The Factfinder believes that the Appellant did not fabricate or use the Affidavits. The Factfinders did not understand the language in the indictment. But the Factfinders found the Appellant Not Guilty of offering false facts contained in Affidavits as new evidence that would effect the course of the official writ proceeding.

### Disqualification and Recusal

Court of Appeals ERRED by not overturning the third point. The Appellant had filed two (2) complaints with the State Commission on Judicial Conduct. These facts are in Trial/Court record. These facts fall under an abuse of discretion standare. It was ERROR in Judgement and abuse of discretion by Judge Walton, for not removing himself from this case. Exhibit 5 and 6.

-4-

Judge Walton stopped the special prosecutor from asking the Appellant any questions after the Jury heard the first question about the complaint against Judge Walton.

Judge Walton was bias and that harm due process of Law.

## Attorney's Fee and Costs

The Court of Appeals did order that the Court Attorney cost of $10,880.27 be removed but because of the facts in points 1,2 and 3 the $436.00 should also be removed.

## PRAYER

I, Raul Villegas Garza, TDCJ #1242954, asks this Honorable Court to grant relief on all grounds, the facts clearly show that the Court of Appeals ERRED.

## INMATE DECLARATION

I, Raul Villegas Garza, verify that all Ground of ERROR are true to the best of my understanding of filing the P.D.R.

Executed at Tenn. Colony Tex, Anderson County Texas 75886.

DATE:

Respectfully Submitted,

Raul Villdgas Garza #1242954
Michale Unit 2664 FM 2054
Tennessee Colony, Texas 75886

RG
CC: Copy for records

-5-

Texas:
2850 Shoreline Trail, Suite 130
Rockwall, Texas 75032
Phone: (214) 458-6009
Fax: (303) 265-9087

Colorado:
1550 Larimer Street, Suite 251
Denver, Colorado 80202
Phone: (303) 330-8636
Fax: (303) 265-9087

# Wendy Carlson
## Expert Document Examiner
WendyCarlson@AmericasHandwritingExpert.com
www.AmericasHandwritingExpert.com

---

## Questioned Document Examiner Letter

March 20, 2014
Subject: Raul Villegas Garza

I have examined nine (9) documents with the purported known handwriting and signatures of Raul Villegas Garza. For the purpose of this examination I have labeled these exhibits 'K1' through 'K9'.

Today I have compared the handwriting and signatures of Raul Villegas Garza on the 'K' documents to the Raul Villegas Garza signature on the questioned document, identified herein as 'Q6', to determine if the person who authored the handwriting and signatures of Raul Villegas Garza on the 'K' documents was the same person who authored the name of Raul Villegas Garza on the 'Q' document: a Consent to Search form dated 3/4/13, purportedly signed by Raul Villegas Garza.

Handwriting is not only handwriting but also "brain" writing. Handwriting is formed by repeated habits of writing by the author that are created by neural pathways established in the brain. These neural pathways control muscular and nerve movement for writing, whether the writing is executed by hand, foot, or mouth. An examination of handwriting includes establishing patterns of writing habits to help identify the author.

A meticulous examination and side-by-side comparison of the questioned signature was conducted using the unaided eye, handheld magnifying loupes, photocopy enlargements and metric measuring devices. The scientific methodology used in this examination consists of the "ACE" method, which stands for "Analyze, Compare and Evaluate," the same method reportedly used by the FBI, the U.S. Treasury Department and U.S. Postal Service in their questioned document laboratories.

My hypothesis was formed without bias as to authorship to the questioned signature. All tests were done with accepted scientific methodology, techniques, and scientific instruments, which helped to confirm authorship of the questioned handwriting.

Based upon thorough analysis of the documents provided to me and from an application of accepted forensic document examination tools, principles, and methodologies, it is my professional expert opinion that a different person authored the name of Raul Villegas Garza on the questioned document. Raul Villegas Garza did not sign his name on the questioned document 'Q6'.

Exhibit 1; (1-3 pages)

I am willing to testify to this fact in a court of law and I will provide exhibits to the Court to show that my opinion is correct. My Curriculum Vitae is attached and incorporated herein by reference.

Respectfully submitted,

Wendy S. Carlson

State of Texas    )
                 )
County of Rockwall  )

The above Letter of Opinion was sworn to and subscribed before me this 20th day of March, 2014.

Notary Public - State of Texas



CARLOTTA C. GARZA
My Commission Expires
April 13, 2015

2 of 3



# Consent to Search

1. You have the right to remain silent
2. Anything you say or do can and will be used against you in a Court of Law.
3. You have the right to talk to a lawyer and have him present with you while you are being questioned, or at anytime you choose.
4. If you cannot afford to hire a lawyer, one will be appointed to represent you before questioning, if you wish.
5. You have the right to stop answering questions anytime you chose.
6. You have the right to refuse permission to search your property, whether owned, leased, or under your control, without a valid search warrant.
7. Anything found in, on, or about your property may be seized and used as evidence against you in a Court of Law.

State of Texas,
County of Hood

I _Raul V. Garza_, hearby grant my consent to _Robert Young_ and _____, Deputies of the Hood County Sheriff's Office to search the following:

___ Vehicle located at: _____

Vehicle described as: Year _____ Make: _____ Model: _____ Color: _____
License Number: _____ Vin # _____
Including containers and contents located therein.

___ Apartment / House located at: _____

Including: _____

~~Place of business known as:~~ _Documents from Inmate Raul Garza's Jail_
Located at: _Cell C TDCJ Michael Unit._
Including: _____

I understand that I have the right to refuse consent to the search described above and to refuse to sign this form.
I further state that no promises, threats, force, or physical or mental coercion of any kind whatsoever have been use against me to get me to consent to the search described above or to sign this form.

SIGNED: _(signature)_

WITNESSES: _(signature)_

DATE: _3/4/13_

TIME: _1853_ AM/PM

QDE EXHIBIT
Q6

Texas:
3021 Ridge Road, Suite A-130
Rockwall, Texas 75032
Phone: (214) 458-6009
Fax: (303) 265-9087

Colorado:
1550 Larimer Street, Suite 251
Denver, Colorado 80202
Phone: (303) 330-8636
Fax: (303) 265-9087

# Wendy Carlson
## Expert Document Examiner
www.AmericasHandwritingExpert.com
ws.carlson@yahoo.com

---

Questioned Document Examiner Letter

January 5, 2015
Subject: *Robert Young*

I have examined five (5) documents with the signatures of Robert Young. For the purpose of this examination I have labeled these exhibits 'S1' through 'S5'.

Today I have compared the signatures of Robert Young on the 'S' documents to the Raul Villegas Garza signature on the questioned document, labeled herein as 'Q6' to determine if the author of the Robert Young signatures on the 'S' documents was the same person who signed the name of Raul Villegas Garza on the questioned document: a Consent to Search form dated 3/4/13, purportedly signed by Raul Villegas Garza.

Handwriting is not only handwriting but also "brain" writing. Handwriting is formed by repeated habits of writing by the author that are created by neural pathways established in the brain. These neural pathways control muscular and nerve movement for writing, whether the writing is executed by hand, foot, or mouth. An examination of handwriting includes establishing patterns of writing habits to help identify the author.

A meticulous examination and side-by-side comparison of the questioned signatures was conducted using the unaided eye, handheld magnifying loupes, photocopy enlargements and metric measuring devices. The scientific methodology used in this examination consists of the "ACE" method, which stands for "Analyze, Compare and Evaluate," the same method reportedly used by the FBI, the U.S. Treasury Department and U.S. Postal Service in their questioned document laboratories. This method was also accepted and affirmed by the District of Columbia Court of Appeals in Case No. 08-CF-1361, *Pettis v. United States*.

My hypothesis was formed without bias as to authorship of the questioned handwriting and signature. My examination revealed significant similarities present in the questioned handwriting and signature when compared to the known handwriting and signatures. All tests were done with accepted scientific methodology, techniques, and scientific instruments, which helped to confirm authorship of the questioned signature.

*Exhibit 2 (1-11 pages)*

---

Based on my scientific examination and agreement of the unique, identifiable handwriting characteristics and the measurable distinctions in the questioned handwriting and signature, it is my professional expert opinion that it is highly probable that the same person who authored the name of Robert Young on the 'S' documents was also the author of name of Raul Villegas Garza on the questioned document. Robert Young did highly probably author the name of Raul Villegas Garza on the questioned document 'Q6'.

I am willing to testify to this fact in a court of law and I will prove to the Court that my opinion is correct. My Curriculum Vitae is attached and incorporated herein by reference.

Respectfully submitted,

Wendy Carlson

State of Texas            §
                          §
County of Rockwall        §

The above Letter of Opinion was subscribed before me by Wendy Carlson this 6th day of January, 2015.

Notary Public

VALERIE J NASTASI
My Commission Expires
August 11, 2018

2 of 11



# Consent to Search

1. You have the right to remain silent
2. Anything you say or do can and will be used against you in a Court of Law.
3. You have the right to talk to a lawyer and have him present with you while you are being questioned, or at anytime you choose.
4. If you cannot afford to hire a lawyer, one will be appointed to represent you before questioning, if you wish.
5. You have the right to stop answering questions anytime you chose.
6. You have the right to refuse permission to search your property, whether owned, leased, or under your control, without a valid search warrant.
7. Anything found in, on, or about your property may be seized and used as evidence against you in a Court of Law.

State of Texas,
County of Hood

I ___Raul V. Garza___, hereby grant my consent to ___Robert Young___ and _____, Deputies of the Hood County Sheriff's Office to search the following:

___ Vehicle located at: _____

Vehicle described as: Year _____ Make: _____ Model: _____ Color: _____
License Number: _____ Vin # _____
Including containers and contents located therein.

___ Apartment / House located at: _____
Including: _____
___ Place of business known as: Documents from Inmate Raul Garza's Jail
Located at: Cell C TDCJ Michael Unit.
Including: _____
_____

I understand that I have the right to refuse consent to the search described above and to refuse to sign this form.

I further state that no promises, threats, force, or physical or mental coercion of any kind whatsoever have been use against me to get me to consent to the search described above or to sign this form.

SIGNED: _____ DATE: 3/4/13

WITNESSES: _____ TIME: 1853 AM/PM

QDE EXHIBIT
Q6

RYK



# Consent to Search

1. You have the right to remain silent.
2. Anything you say or do can and will be used against you in a Court of Law.
3. You have the right to talk to a lawyer and have him present with you while you are being questioned, or at anytime you choose.
4. If you cannot afford to hire a lawyer, one will be appointed to represent you before questioning, if you wish.
5. You have the right to stop answering questions anytime you chose.
6. You have the right to refuse permission to search your property, whether owned, leased, or under your control, without a valid search warrant.
7. Anything found in, on, or about your property may be seized and used as evidence against you in a Court of Law.

**State of Texas,**
**County of Hood**

I, _Raul V. Garza_, hearby grant my consent to _Robert Young_ and _____, Deputies of the Hood County Sheriff's Office to search the following:

Vehicle located at: _____

Vehicle described as: Year _____ Make: _____ Model _____ Color: _____
License Number: _____ Vin # _____
Including containers and contents located therein.

Apartment / House located at: _____

including: _____

~~Place of business known as~~ _Documents from Inmate Raul Garza's Jail_
Located at: _Cell C TDCJ Michael Unit._
Including: _____

I understand that I have the right to refuse consent to the search described above and to refuse to sign this form.

I further state that no promises, threats, force, or physical or mental coercion of any kind whatsoever have been use against me to get me to consent to the search described above or to sign this form.

SIGNED: _(signature)_      DATE: _3/4/13_

WITNESSES: _(signature)_      TIME: _1853_ A.M. / P.M.

QDE EXHIBIT
S1

# Hood County District Attorney
## 355th Judicial District
## VOLUNTARY STATEMENT

CASE # _____

FULL NAME *Raul Villegas Garza*  DATE OF BIRTH *12/31/1960*

HOME ADDRESS *2664 FM 2054 Michael Unit*  DATE *3/4/2013*

HOME PHONE _____  WORK PHONE _____  TIME STARTED _____

DL NUMBER *09363876*  SOCIAL SECURITY NUMBER *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*

Before answering any questions or making any statements, Investigator Robert Young, a person who identified himself or herself as an Investigator for the Hood County District Attorney, duly warned and advised me, and I know and understand that I have the following rights:

1. I HAVE THE RIGHT TO REMAIN SILENT AND NOT MAKE ANY STATEMENT AT ALL AND ANY STATEMENT I MAKE MAY BE USED AGAINST ME AT MY TRIAL.
2. ANY STATEMENT I MAKE MAY BE USED AS EVIDENCE AGAINST ME IN COURT.
3. I HAVE THE RIGHT TO HAVE A LAWYER PRESENT TO ADVISE ME PRIOR TO AND DURING ANY QUESTIONING.
4. IF I AM UNABLE TO EMPLOY A LAWYER, THAT I HAVE THE RIGHT TO HAVE A LAWYER APPOINTED TO ADVISE ME PRIOR TO AND DURING ANY QUESTIONING.
5. I HAVE THE RIGHT TO TERMINATE THE INTERVIEW AT ANY TIME.

Fully understanding my rights, I hereby knowingly, intelligently and voluntarily waive my right to remain silent, and my right to have a lawyer present while I make the following statement to the aforesaid person, knowing that I have the right and privilege to terminate any interview at any time hereafter and have a lawyer present with me before answering any more questions or making any more statements, if I choose to do so.

I declare that the following voluntary statement is made of my own free will without promises of hope or reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of leniency, by any person or persons whomsoever.

Mr. Christian, what can I say, but I sorry for making these false document. But, I believe that you and your office knowly used perjury testimony in my trial. Please understand my reason, I knew it would come back and get me. But, I hope in this investigation done by investigator Mr. Young the truth will come out that according to the endictment state witness investigator Joy Johnson lied, she perjury her self to get a conviction, and she was part of the prosecution team.

I know I was in the wrong for this act but, all I was trying to get was a hearing

I have read each page of this statement consisting of _____ page(s), each page of which bears my signature, and corrections if any bear my initials, and I certify that the facts contained herein are true and correct. I further certify that I made no request for the advice or presence of a lawyer before or during any part of this statement, nor at any time before it was finished did I request that this statement be stopped. I also declare that I was not told or prompted what to say in this statement.

TIME COMPLETED _____  DATE COMPLETED _____

WITNESS _____ #478

WITNESS _____

Signature of person giving voluntary statement

# Hood County District Attorney
## 355th Judicial District
## VOLUNTARY STATEMENT

CASE # _____

FULL NAME _____ DATE OF BIRTH _____

HOME ADDRESS _____

HOME PHONE _____ WORK PHONE _____ DATE _____

DL NUMBER _____ TIME STARTED _____

SOCIAL SECURITY NUMBER _____

Before answering any questions or making any statements, *Investigator Robert Young*, a person who identified himself or herself as an Investigator for the Hood County District Attorney, duly warned and advised me, and I know and understand that I have the following rights:

1. I HAVE THE RIGHT TO REMAIN SILENT AND NOT MAKE ANY STATEMENT AT ALL AND ANY STATEMENT I MAKE MAY BE USED AGAINST ME AT MY TRIAL.
2. ANY STATEMENT I MAKE MAY BE USED AS EVIDENCE AGAINST ME IN COURT.
3. I HAVE THE RIGHT TO HAVE A LAWYER PRESENT TO ADVISE ME PRIOR TO AND DURING ANY QUESTIONING.
4. IF I AM UNABLE TO EMPLOY A LAWYER, THAT I HAVE THE RIGHT TO HAVE A LAWYER APPOINTED TO ADVISE ME PRIOR TO AND DURING ANY QUESTIONING.
5. I HAVE THE RIGHT TO TERMINATE THE INTERVIEW AT ANY TIME.

Fully understanding my rights, I hereby knowingly, intelligently and voluntarily waive my right to remain silent, and my right to have a lawyer present while I make the following statement to the aforesaid person, knowing that I have the right and privilege to terminate any interview at any time hereafter and have a lawyer present with me before answering any more questions or making any more statements, if I choose to do so.

I declare that the following voluntary statement is made of my own free will without promise of hope or reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of leniency, by any person or persons whomsoever.

_Sir, Please grant mercy, I will file or work on my freedom or actual innocence until I get out._

_Mr. Christian, according to Mr. Young you and a hired District Attorney allow him to investigate Sky Johnson testimony with her single statement by me and the Video tape of the interest Mr. Christian you will see that investigator Johnson lied on the witness stand. This does not make it right what I did, But this is the reason I did what I did. Sincerely,_

I have read each page of this statement consisting of _____ page(s), each page of which bears my signature, and corrections if any bear my initials, and I certify that the facts contained herein are true and correct. I further certify that I made no request for the advice or presence of a lawyer before or during any part of this statement, nor at any time before it was finished did I request that this statement be stopped. I also declare that I was not told or prompted what to say in this statement.

TIME COMPLETED _____ DATE COMPLETED _____

WITNESS _____

WITNESS _____

Signature of person giving voluntary statement

QDE EXHIBIT

S3

# Hood County District Attorney
## 355th Judicial District
## VOLUNTARY STATEMENT

CASE # _____

FULL NAME _____ DATE OF BIRTH _____

HOME ADDRESS _____

DATE _____

HOME PHONE _____ WORK PHONE _____ TIME STARTED _____

DL NUMBER _____ SOCIAL SECURITY NUMBER _____

Before answering any questions or making any statements, **Investigator Robert Young**, a person who identified himself or herself as an Investigator for the Hood County District Attorney, duly warned and advised me, and I know and understand that I have the following rights:

1. I HAVE THE RIGHT TO REMAIN SILENT AND NOT MAKE ANY STATEMENT AT ALL AND ANY STATEMENT I MAKE MAY BE USED AGAINST ME AT MY TRIAL.
2. ANY STATEMENT I MAKE MAY BE USED AS EVIDENCE AGAINST ME IN COURT.
3. I HAVE THE RIGHT TO HAVE A LAWYER PRESENT TO ADVISE ME PRIOR TO AND DURING ANY QUESTIONING.
4. IF I AM UNABLE TO EMPLOY A LAWYER, THAT I HAVE THE RIGHT TO HAVE A LAWYER APPOINTED TO ADVISE ME PRIOR TO AND DURING ANY QUESTIONING.
5. I HAVE THE RIGHT TO TERMINATE THE INTERVIEW AT ANY TIME.

Fully understanding my rights, I hereby knowingly, intelligently and voluntarily waive my right to remain silent, and my right to have a lawyer present while I make the following statement to the aforesaid person, knowing that I have the right and privilege to terminate any interview at any time hereafter and have a lawyer present with me before answering any more questions or making any more statements, if I choose to do so.

I declare that the following voluntary statement is made of my own free will without promise of hope or reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of leniency, by any person or persons whomsoever,

_That the truth would come out I had filed five state writ 107 four writ new evidence but you never wrote what you think in them I know that this is not case 9232, But Please understand my motive was only to get a hearing on my case to show you and the court that important state witnesses lied and to get a up to day medical examination don't that will prove that Both ex-wive perjury them self._

_Again, I very sorry about do what I_

I have read each page of this statement consisting of _____ page(s), each page of which bears my signature, and corrections if any bear my initials, and I certify that the facts contained herein are true and correct. I further certify that I made no request for the advice or presence of a lawyer before or during any part of this statement, nor at any time before it was finished did I request that this statement be stopped. I also declare that I was not told or prompted what to say in this statement.

TIME COMPLETED _____ DATE COMPLETED _____

WITNESS _____ #446

WITNESS _____

Signature of person giving voluntary statement

QDE EXHIBIT

54

Respectfully submitted,

_____
Lori J. Kaspar
Hood County Attorney
Special Prosecutor
SBN 24050854

Hood County Attorney's Office
1200 W. Pearl St.
Granbury, Texas 79048
817-579-3216


_____
Gay Johnson


_____
Wanda Flanary


_____
Robert Young


_____
Colleen Sells


_____
Dolores Phillips


_____
Faith Olson


_____
Priscilla Kindle Sides

State's Motion to Quash – CR12706 – Raul V. Garza                                    8

8 of 11

QDE EXHIBIT
55

Texas:
3021 Ridge Road, Suite A-130
Rockwall, Texas 75032
Phone: (214) 458-6009
Fax: (303) 265-9087

Colorado:
1550 Larimer Street, Suite 251
Denver, Colorado 80202
Phone: (303) 330-8636
Fax: (303) 265-9087

# Wendy Carlson
### Expert Document Examiner
www.AmericasHandwritingExpert.com
ws.carlson@yahoo.com

# Curriculum Vitae

## Qualifications:

*Wendy Carlson is a Certified Forensic Document Examiner and Registered Investigator. Ms. Carlson has been qualified as an Expert by State, Local, and Federal courts and has testified in Arizona, Arkansas, Colorado, Florida, Michigan, New York, Oklahoma, Pennsylvania, South Dakota, Texas, Utah, Virginia, Washington and Wyoming. She has studied handwriting and document examination and apprenticed under some of the leading court-qualified Forensic Document Experts in the U.S.A. Wendy has been appointed by federal and state court judges to render opinions on handwriting issues in Colorado and Texas and has completed forensic document examinations for government entities such as Grand Prairie Police Department, Hill County and State Bar of Texas in Texas; Offices of the State or Federal Public Defenders in Nevada, New York and Wyoming; Office of the General Counsel in Oklahoma; Buena Vista Police Department, Chaffee County Sheriff's Department, and City and County of Denver in Colorado.*

*In the last six years, Ms. Carlson has examined more than 12,000 documents and rendered opinions in approximately 1,000 active cases and peer reviews involving questioned signatures, altered documents, handwritings, legal contracts, court documents, anonymous writing, and graffiti. Ms. Carlson has rendered opinions on documents from clients in the following states and foreign countries: Alabama, Alaska, Arkansas, Arizona, California, Colorado, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, Wisconsin, Wyoming, Washington D.C., Albania, Bahamas, Canada, Chile, Cook Islands, Estonia, Haiti, Hong Kong, India, Kenya, Liberia, London, Morocco, New Zealand and Ukraine. Ms. Carlson has examined documents and rendered opinions for handwriting comparisons written in Afghani, Arabic, Chinese, Eastern Indian, English, Greek, Korean and Spanish writing.*

*Ms. Carlson's expertise was featured in CNN, The Dallas Morning News, and The Houston Chronicle, as well as investigative reports by ABC's The Denver Channel and CBS4 in Denver, Colorado. Ms. Carlson was hired by the State of Colorado's Denver Election Division to teach employees how to identify a questioned signature prior to the 2011, 2012, 2013 and 2014 local and national elections.*

## Forensic Examination Provided For:

*Disputed documents or questioned signatures on wills, checks, contracts, deeds, account ledgers, suspect documents, forgeries, identity theft, anonymous letters and writings, alterations, obliterations, erasures, typewritten documents, altered medical records, graffiti, handwritten numbers, computerized and/or handwritten documents, suicide notes, and autograph authentication.*

## Education:

*International School of Forensic Document Examination, Los Angeles, California, 2007-2009*

*Certification after completion of a two-year course and apprenticeship under leading authorities in the field of Forensic Document Examination and Handwriting Identification from the International School of Forensic Document Examination. Attended weekly classes, lectures and teleseminars from Court Qualified Document Examiners and Instructors Bart Baggett, Robert Baier, Don Lehew, and Beth Chrisman. Prepared for, observed, and testified in actual court trials.*

*Twelve years experience assisting multiple trial attorneys in case and trial presentation, 1996-2008*

*American College of Forensic Examiners International*

Certification after Completion of Registered Investigator Course, July 2010
Certification after Completion of Crime Scene Investigation Course, November 2010
Certification after Completion of Digital Forensics Introduction Course, November 2010

*American Institute of Applied Science, Inc.*

Completed lessons and exams for Questioned Documents course, April 2012

## Specific Areas of Training:

Handwriting Identification and Discrimination, Signature Comparison, Techniques for Distinguishing Forged Signatures, Disguised Handwriting, Hand Printing, Block Printing, Altered Numbers, Anonymous Writing, Factors that Affect Writing, Altered Documents, Trial and Deposition Preparation, Document and Exhibit Preparation for Court, Discriminating Elements of Handwriting, Obliterated Writing, Ethics Requirements of a Document Examiner.

## Laboratory Equipment and Library Available for Use in Examination:

Richter Optica S6.6 LCD Stereo Zoom Microscope with screen and camera, handheld magnifying devices and loupes of 3x-20x, Light Tracer light box, protractor, metric measuring devices, portable black light, Kodak 10x Optical IS digital camera, iMac computer and software, 21.5-inch flat screen monitor, multiple scannesr, printers and copiers. Various books and articles on document examination, handwriting, and hundreds of detailed case studies from actual cases.

## Professional Memberships:

Scientific Association of Forensic Examiners
American College of Forensic Examiners International
Forensic Expert Witness Association
Sheriff's Association of Texas
Texas Police Association

## Publications:

How to Spot a Forgery
Working With an Expert Witness

## Lectures, Seminars and Continuing Education:

| | |
|---|---|
| 11/12/08 | The Scope and Sources of Document Examination; Professor: Bart Baggett |
| 12/03/08 | Science, Scientific Method, and Writing Identification; Professor: Bart Baggett |
| 12/10/08 | Review and Discussion of American Society for Testing and Materials; Professor: Bart Baggett |
| 12/12/08 | Assistance in preparation and observation of forgery trial held in the Bahamas with C. L. Baggett |
| 02/18/09 | Understanding the Trial; Professor: Bart Baggett |
| 02/28/09 | Real Case Mock Trial |
| 03/11/09 | A Guide to Law and the Courts, and Rules of Evidence; Professor: Bart Baggett |
| 03/25/09 | Real Case Mock Trial |
| 06/23/07 | Trial and deposition appearance, testimony, and presentation; Lecturer: Carolyn West |
| 07/02/09 | ASTM Guidelines; Professor: Bart Baggett |
| 07/09/09 | Jury Selection and an Understanding the Law and the Courts; Real Case Mock Trial; Professor: Bart Baggett |
| 07/23/09 | The Rules and Future Challenges to the Expert; Professor: Bart Baggett |
| 09/25/09 | Critical Incident Stress: Statement Analysis and Interview v. Interrogation; Instructor: Faith Wood |
| 01/28/10 | Working with the Expert Witness...the Plaintiff Attorney's Prospective; Lecturer: Windle Turley, Esq. |
| 07/15/10 | Certification after Completion of Registered Investigator Course, ACFEI, July 2010 |
| 08/14/10 | Forensic Document Examination Seminar training and instruction with Professor Bart Baggett and Instructor Robert Baier |
| 08/14/10 | Identity Theft and Prevention; Instructor Robert Baier |
| 08/15/10 | Testing of students for Certification at Handwriting University |

*18 of 11*

| | |
|---|---|
| 08/31/10 | Introduction to Forensic Document Examination; Instructors Bart Baggett and Beth Chrisman |
| 09/29/10 | Attendance and observation of deposition held in Texas with C. L. Baggett |
| 10/01/10 | Lecturer and Instructor - Introduction to Forensic Document Examination, Clear Lake High School, Houston, Texas |
| 11/08/10 | CLE: Demystifying Daubert: Daubert's Effect on Your Work as an Expert Witness; presented by The TASA Group, Inc. |
| 11/16/10 | Certification after Completion of Crime Scene Investigation Course, ACFEI, November 2010 |
| 11/16/10 | Certification after Completion of Digital Forensics Introduction Course, ACFEI, November 2010 |
| 04/15/11 | Lecturer and Instructor - "How to Spot a Forgery", Denver Elections Division, Denver, Colorado |
| 03/08/12 | Continuing research on Science and the Scientific Method |
| 03/11/12 | Continuing research on the Significance of Measurements in Forensic Document examination |
| 04/02/12 | Continuing research on Disguised Handwriting |
| 04/06/12 | Completed American Institute of Applied Science, Inc. lessons and exams for Questioned Documents course |
| 06/08/12 | Lecturer and Instructor - "How to Spot a Forgery", Denver Elections Division, Denver, Colorado |
| 08/17/12 | Attendance and observation of criminal trial with Bart Baggett, Expert QDE, in Los Angeles, California |
| 10/12/12 | Lecturer and Instructor - Refresher Course: "How to Spot a Forgery", Denver Elections Division, Denver, Colorado |
| 10/16/12 | Continuing research regarding ESIGN, electronic documents and records, and electronic signatures |
| 12/15/12 | Speaker - Holographic Wills and Signatures, Military Order of Purple Hearts Annual Meeting, Dallas, Texas |
| 02/05/13 | Speaker - Introduction to the Science of Handwriting and Document Examination, Jesuit College Preparatory School, Forensic Science Department, Dallas, Texas |
| 02/21/13 | Speaker - Introduction to the Science of Handwriting and Document Examination, Irma Lerma Rangel Young Women's Leadership School, Dallas, Texas |
| 02/20/14 | Expert Witnesses and Lawyers Caught Off Guard: Lessons Learned, EJ Janik, Gary Kessler, Esq. |
| 10/18/13 | Lecturer and Instructor - "How to Spot a Forgery", Denver Elections Division, Denver, Colorado |
| 05/14/14 | Continuing research on handwriting of individuals with Parkinson's Disease |
| 06/06/14 | Lecturer and Instructor - "How to Spot a Forgery", Denver Elections Division, Denver, Colorado |
| 06/23/14 | Instruction and Training of new ballot and voter signature input equipment and software, Denver Elections Division, Denver, Colorado |
| 01/19/15 | Lecture and Presentation/Training – "How to Spot a Forgery", Colorado County Clerks Association, Pueblo, Colorado |

Printed June 22, 2015

INDICTMENT NO.____CR12706

**FILED**
MAR - 5 2014
~~Janna Trumble Hitt~~
Clerk District Court, Hood County, Texas

**355TH JUDICIAL DISTRICT OF TEXAS**

| | |
|---|---|
| STATE OF TEXAS | OFFENSE: AGGRAVATED PERJURY |
| VS. RAUL VILLEGAS GARZA | DEGREE: THIRD ENHANCED TO SECOND DEGREE, Sec. 37.03 |
| DATE OF BIRTH: 12-31-60 | SOC.SEC.NO. 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 |
| TRN NO. 9156751834 | SID NO. 02662320 |
| DATE FILED: 03-05-2014 | STATE'S WITNESS: Robert Young |
| AMOUNT OF BAIL: $25,000.00 | STATE'S ATTORNEY: Lori J. Kaspar |

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

**IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:**

The Grand Jurors for the county of Hood, State of Texas, duly selected, impaneled, sworn, charged, and organized as such at the January Term 2014 of the 355th Judicial District Court of Hood County, Texas, upon their oaths present in and to the Court that on or about the 13th day of February 2013, and before the presentment of this indictment, in Hood County, Texas, RAUL VILLEGAS GARZA, Defendant, did then and there, with intent to deceive and with knowledge of the statement's meaning, make a false unsworn declaration under Chapter 132 of the Texas Civil Practices and Remedies Code, and the false statement was made during or in connection with an official proceeding, and the false statement is material, to-wit: the filing of an application for a writ of habeas corpus in the 355th Judicial District Court of Hood County, Texas, assigned cause number W9232-6, returnable to the Texas Court of Criminal Appeals and related to defendant's prior conviction on June 9, 2004 in Cause Number 9232 in the 355th Judicial District Court of Hood County, Texas styled the State of Texas vs. Raul Villegas Garza

1

*Exhibit 3 (1-2 pages)*

and the said false unsworn declaration was then and there material to said writ proceeding in that false statements made in the application for a writ of habeas corpus and false facts contained in affidavits included in the application for a writ of habeas corpus were offered by defendant as new evidence in support of defendant's claim of actual innocence and could have affected the course or outcome of the official writ proceeding.

## COUNT TWO

and it is further presented in and to said Court that on or about the 13th day of February, 2013, in Hood County, Texas, RAUL VILLEGAS GARZA, Defendant, did then and there, knowing that an official proceeding was pending or in progress, to-wit: the filing of an application for writ of habeas corpus in the 355th Judicial District Court of Hood County, Texas, assigned cause number W9232-6, returnable to the Texas Court of Criminal Appeals, related to defendant's prior conviction on June 9, 2004, in Cause Number 9232 in the 355th Judicial District Court of Hood County, Texas, styled The State of Texas vs. Raul Villegas Garza, intentionally or knowingly make, present and use documents, to-wit: the purported affidavits of "Priscilla Kendall" and "Dr. H. Pat Hezmall," with knowledge of their falsity and with intent to affect the course or outcome of the official proceeding,

## ENHANCEMENT PARAGRAPH ONE

and it is further presented in and to said Court that prior to the commission of the primary offense by the said RAUL VILLEGAS GARZA, on the 9th day of June, 2004, in the 355th Judicial District Court of Hood County, Texas, in cause number 9232, the said RAUL

## SUMMARY OF INTERVIEW;

### JOHN PIZER
### 2/10/1927

## LOCATION OF INTERVIEW;

### 4201 E. Desert Cove
### Phoenix, AZ

## DATE AND TIME OF INTERVIEW;

### May 30th, 2013
### 1003 hours

## PRESENT AT INTERVIEW;

**Det. Fernando Galvez #5885 Phoenix P.D.**
**Det. Micah Kaskavage #7284 Phoenix P.D.**
**Det. Sara Garza #8989 Phoenix P.D.**

On 05/29/13, Det. Kaskavage and I spoke with Investigator Robert Young #446 from the Texas District Attorney's Office requesting some assistance on an aggravated perjury case he was investigating involving an inmate by the name of Raul Garza (#1242954). Investigator Young briefed us on his investigation and asked if we could speak with a Mr. John Pizer who lived here in Phoenix, AZ, who allegedly was Raul's power of attorney and who assisted Mr. Garza on filing the Writ of Habeas Corpus.

On 5/30/13 I obtained a phone number for John Pizer through Phoenix Police Department's PACE system where Mr. Pizer was a victim on a previous unrelated case in Phoenix. (602) 996-4846. I called Mr. Pizer at approximately 0900 hours and identified myself to him as a Detective with the Phoenix Police Department and asked if Detectives and I could meet up with him reference a case being conducted in Texas. Mr. Pizer agreed to meet with us and asked what case I was referring to. I advised him that it was reference an inmate by the name of Raul Garza. Mr. Pizer immediately recognized the name and we agreed that we would meet up at his home residence (4201 E. Desert Cove) at 1000 hours.

At approximately 1000 hours Det. Kaskavage, Det. Garza and I arrived at Mr. Pizer's residence. I knocked at the door and Mr. Pizer answered. I identified ourselves to him and he escorted us to his kitchen table so we could interview him reference Raul Garza. Mr. Pizer's was informed that he was not under arrest but we wanted to question him reference his relationship with a prison inmate in Texas by the name of Raul Garza. I then informed Mr. Pizer that the interview would be recorded so that I could properly

*Exhibit 4 (1-5 pages)*

document the details of my interview with him. Mr. Pizer did not oppose to being recorded.

Interview began at 1003 hours and the following is a summary of my interview with Mr. Pizer;

Mr. Pizer identified himself to us and was asked how he came into contact with Raul Garza, a prisoner in Texas. Mr. Pizer informed us that he was an organization called Prison Legal Aid Association and Raul Garza wrote to him for help. Mr. Pizer said Raul Garza stated on the letter that he was innocent and wanted help.

Mr. Pizer was asked when Mr. Garza contacted him and Mr. Pizer said he could find out. (Mr. Pizer went to another room and came back to the kitchen table with a file that pertained to Raul Garza). Mr. Pizer then showed me the original letter that Raul Garza sent him. I then asked Mr. Pizer if he could tell us what happened from this letter to the time the Writ of Habeas Corpus was written.

Mr. Pizer said he (Raul Garza) needed some evidence to prove his innocence so he (Mr. Pizer) contacted several Doctors from names that he (Raul Garza) had given him who were Doctors that had examined Raul Garza in the past. Mr. Pizer said he tried to get affidavits from them (Doctors) but that they (Jail house Doctors) were told by their superiors that they were not allowed to respond to Mr. Pizer's request. Mr. Pizer said he finally did get a letter two years later from Doctor Jack Thompson, an affidavit, of what he was exactly asking for.

Mr. Pizer explained that Raul Garza had given him a list of Doctors so Mr. Pizer could attempt to obtain an affidavit. Mr. Pizer said he reached out to approximately 5 doctors and generally received no response at all.

I asked Mr. Pizer if he spoke with a Dr. Hezmall and he said no, only by mail, that he wrote him a letter and Dr. Hezmall recently responded back via mail.

I then showed Mr. Pizer a photo copy of an affidavit that Dr. Hezmall allegedly sent Mr. Pizer and asked him if this was a copy of the affidavit that he had received. Mr. Pizer initially said this was one of a few, then redacted his statement and said this was the one and only affidavit he received. Mr. Pizer was asked about the notary on the document and asked if he received the document as is. Mr. Pizer said it had a Texas notary on it and that he received the document as is. *(I documented and labeled this item as Item #1)*

I asked Mr. Pizer what else he did for Mr. Garza and he said he wrote a Habeas Corpus petition for Mr. Garza. Mr. Pizer tells us that he is not an attorney and did not sign it, that Mr. Garza did. I then showed Mr. Pizer a photocopy of a memorandum of law and argument in support of 11.07 application for Writ of Habeas Corpus. Mr. Pizer identified it as an amendment to the original Writ of Habeas Corpus. I asked Mr. Pizer if he wrote this application and Mr. Pizer said he did. I asked him to flip through the pages to

confirm the document. Mr. Pizer flipped through the pages and said it appears to be complete as the document he wrote. I then asked him about the signature on the last page with Raul Garza's name. I asked Mr. Pizer if it was true that Mr. Garza had given him a power of attorney back in 2009, and Mr. Pizer immediately said no and then said he didn't remember but that didn't matter because he (Mr. Pizer) could not sign for him (Raul Garza). I asked Mr. Pizer then, that the signature was not his (Mr. Pizer). Mr. Pizer agreed and said it was Raul Garza's signature. I asked Mr. Pizer then that the process would have been for him to complete the write the Writ of Habeas Corpus and he would have sent it to Mr. Garza to sign. Mr. Pizer agreed. (*I documented and labeled this item as Item #2*)

I confirmed with Mr. Pizer that Item #2 was an amendment and I then presented a photocopy of the original Writ of Habeas Corpus and asked Mr. Pizer if this was the original. Mr. Pizer reviewed the document and identified it as the original Writ of Habeas Corpus that he wrote. I asked Mr. Pizer if he could explain to me how the process works with these documents. Mr. Pizer tells me that he wrote the Writ, printed it out and mailed it to Mr. Garza. I confirmed with Mr. Pizer that he wrote everything and asked if the signature on the last page was his and he said no that it was Mr. Garza's. (*I documented and labeled this item as Item #3*).

I then showed Mr. Pizer another document that was filed with the Judicial District Court Clerk in Hood County, Texas and Mr. Pizer identified it has a document he wrote minus the signature which he stated was Raul Garza's signature. (*I documented and labeled this item as Item #4*)

Det. Kaskavage asked Mr. Pizer if he would write the documents, sends them to Mr. Garza and asked if Mr. Garza would file them. Mr. Pizer said on some occasions that Mr. Garza would file them or Mr. Garza would send them back to him so he could file them.

I asked Mr. Pizer if he charged a fee for this work and he explained that he does not charge that he runs a non-profit organization.

I asked Mr. Pizer about a Priscilla Kendall that is mentioned in documents that he wrote and asked if he had spoken with her. Mr. Pizer said he did not speak with her only by mail correspondence. Mr. Pizer said he mailed her one or two letters early on and she responded back with an affidavit much later, fairly recently, sometime this year. I then showed Mr. Pizer a photocopy of an affidavit that Mr. Pizer submitted to the court that allegedly was written by Priscilla Kendall, and he identified it was the affidavit that he had received. I clarified with Mr. Pizer that he wrote the amendment (Writ) and these exhibits that he received he attached to the amendment, he agreed. (*I documented and labeled this item as Item #5*).

I then mentioned to Mr. Pizer that he early spoke about receiving an affidavit from a Doctor Jack Thompson. I showed him a photocopy of an affidavit and Mr. Pizer identified it as the affidavit that he had received. (*I documented and labeled this item as Item #6*).

Mr. Pizer then asked us what the purpose of our investigation is and what we were looking into. I explained to Mr. Pizer that the documents were forged. I told him forged signatures and that the notaries were forged. Mr. Pizer asked which documents and I told him the affidavit from Priscilla Kendall and from Dr. Hezmall. Mr. Pizer appeared to be startled and said "Really..........I had no knowledge of that". Mr. Pizer later tells us that he did not write them and nothing to do with writing those affidavits. We informed him that we were here to verify this information and asked Mr. Pizer if he had the original correspondence between all of these parties and he said he did.

Mr. Pizer had a manila folder with documents on the table and I asked if this was his file for Raul Garza and he said yes. Mr. Pizer began looking through the file and found a letter from Pat Hezmall dated back in 1993, and then found a power of attorney that Raul Garza had given to Mr. Pizer. Mr. Pizer continued looking through his file and I asked him if it was okay for us to photocopy his file so we could give it to the Texas District Attorney's Office to assist them in their investigation. Mr. Pizer said that would be okay.

I asked Mr. Pizer if he had any questions for us and Mr. Pizer asked again that the investigation was centered on the affidavits written by Priscilla Kendall and Dr. Hezmall. I acknowledged and told him that we were also inquiring about the signatures on the Writ of Habeas Corpus and the amendment because Mr. Garza was stating that he (Mr. Pizer) had signed the documents. Mr. Pizer gasped, and said he might have signed some of those. Mr. Pizer said he shouldn't have but might have signed some of those. I told Mr. Pizer that I examined the signatures on the Writ's and they appear to be different than Mr. Garza's actual signature. Mr. Pizer tells us again that he might have signed the Writ's. I asked why he would have done this and he tells us only to help expedite it. Mr. Pizer tells us that there is a problem in Texas with the mailing departments in the prison. He tells us that when he mails something to a prisoner to have them sign and file in the court that the papers get lost deliberately. Mr. Pizer said when he knows that is happening that he would sign the papers and send them in the courts because he is very leery. I told Mr. Pizer that would make sense because I noticed that he forgot the cover sheet and it's dated the exact next day, as if he just signed it and mailed it to the court. Mr. Pizer agreed that could be it. Mr. Pizer said he could not remember which is which but could have signed for Mr. Garza. Mr. Pizer was asked about the affidavits and he admittedly insisted that he had nothing to do with the affidavits that they arrived to him as such.

I asked Mr. Pizer if he had ever spoken with Mr. Garza and he said no, he only communicated with him via mail correspondence. Mr. Pizer said the file he had with him was correspondence that Mr. Garza had sent him but he (Mr. Pizer) had letters he sent to Mr. Garza on his hard drive on his computer. I asked Mr. Pizer if he could make copies for us and he agreed to supply a compact disc with what he had.

Mr. Pizer then said he wanted to ask the question that he was trying to ask us earlier if it was true that either one or both Pat Hezmall or Patricia Kendall have stated that they either did not write or did not sign the affidavits. I explained to him that was the information that we had obtained from the Texas authorities on their investigation. Mr. Pizer tells us that in the case of Patricia Kendall that it was possible for her not to

acknowledge the document because she has multiple personality disorder. Mr. Pizer said as for Dr. Hezmall there isn't an explanation, either he did of didn't write it.

I went over with Mr. Pizer on documents (affidavits) that he received and the filing of the Writ's. Mr. Pizer told me that he wrote the original Writ of Habeas Corpus once he received the affidavit from Dr. Jack Thompson and later wrote the amendment on another date. I questioned him about this as I showed him Item #3 and Item #2, the original and amendment Writ of Habeas Corpus, and showed him that they were both signed on the same date; February 8, 2013. Mr. Pizer said that was not right that there was something wrong. Mr. Pizer said he could not explain this because the original had to have been filed months before. I went over the signatures and dates again with Mr. Pizer and Mr. Pizer examined the signatures on Item #1 (original Writ of Habeas Corpus) and stated that the written date on listed as 2-08-2013 was not his signature. Mr. Pizer stated that the signature for Raul Garza might be his but the written date his not his handwriting.

I asked Mr. Pizer if he could sign the name of Raul Garza so we could compare it to the signatures on the Writ's to identify which ones Mr. Pizer signed. He signed a blank piece of paper. (*I documented and labeled this item as Item #A*).

At 1040 hours we terminated our interview with Mr. Pizer. Mr. Pizer then handed me his manila file that pertained to Mr. Garza and explained that he would make a C/D copy of the documents that he had on his hard drive computer.

On 5/31/13 Mr. Pizer's file on Mr. Garza was scanned in electronically. At approximately 1030 hours I went to Mr. Pizer's residence to return his file to him and he handed me a C/D with the files that he had on his hard drive that pertained to Mr. Garza.

On 6/4/13 all files were copied on c/d disks and mailed to Commander Robert Young of the Texas Judicial District Attorney's Office.

Det. Fernando Galvez #5885
Phoenix Police Department
Drug Enforcement Bureau



# State Commission on Judicial Conduct



**Officers**
Tom Cunningham, Chair
Steven L. Seider, Vice Chair
Patti H. Johnson, Secretary

**Members**
Sid Harle
Karry K. Matson
Joel P. Baker
Edward J. Spillane, III
Martha M. Hernandez
Diane D. Threadgill
M. Sue Kurita
David Gaultney
Valerie E. Ertz
Ricky A. Raven

**Executive Director**
Seana Willing

December 17, 2012

**CONFIDENTIAL**

Raul Villegas Garza
Michael Unit 1242954
2664 FM 2054
Tennessee Colony TX 75886-5000

Re:    CJC No. 13-0305-DI

Dear Mr. Garza:

We have received your complaint against a Texas judge. All complaints receive a thorough review and investigation relevant to the allegations, and are presented to the Commission. After its consideration, the Commission may dismiss a complaint, impose sanctions against a judge, or take other appropriate action. The Commission's actions are governed by Article V, Section 1-a of the Texas Constitution and Chapter 33 of the Texas Government Code.

Please be advised that our proceedings are confidential. We are prohibited by Section 33.033(c) of the Texas Government Code from identifying by name the judge against whom you have filed a complaint. In order to assist us with our investigation, please reference the above-listed CJC case number in all future correspondence. Additionally, if you intend to submit additional documents for our consideration, please send photocopies.

For your additional assistance, we have enclosed an information sheet that will explain more completely the process involved in investigating allegations of judicial misconduct.

We will inform you in writing of the Commission's action on your complaint.

If you have any questions or need additional information, please contact our office. When calling, please mention the above-listed CJC case number so as to expedite your phone call.

STATE COMMISSION ON JUDICIAL CONDUCT

Enclosure

Exhibit 5

# State Commission on Judicial Conduct

**Officers**
Tom Cunningham, Chair
Steven L. Seider, Vice Chair
Patti H. Johnson, Secretary

**Members**
Sid Harle
Karry K. Matson
Joel P. Baker
Edward J. Spillane, III
Martha M. Hernandez
Diane D. Threadgill
M. Sue Kurita
David Gaultney
Valerie E. Ertz
Ricky A. Raven

**Executive Director**
Seana Willing



February 18, 2013

**CONFIDENTIAL**

Raul Villegas Garza#1242954
Michael Unit
2664 FM 2054
Tennessee Colony TX 75886-5000

Re: CJC No. 13-0305-DI

Dear Mr. Garza:

We appreciate the concerns raised in your letter. However, the Commission determined that the matter raised in your complaint pertain to decisions or rulings made by the judge while exercising his/her discretion. As a general rule, a judge's discretionary decisions – even if they are wrong – are not examples of judicial misconduct. The Commission has no authority to intervene in a court case, ask a judge to step down from a case, or change a judge's rulings.

The Commission cannot act as an appellate court. Therefore, based on laws that govern the Commission's authority and define what actions can be considered judicial misconduct, this case has been dismissed.

This decision is not intended to prevent you from pursuing other legal remedies that may be available to you. In fact, we encourage you to consult with an attorney to determine what steps you could take to address your concerns.

While we were not able to assist you with your concerns, we appreciate your interest in assisting us in maintaining the high ethical standards of the Texas judiciary. Thank you for bringing these issues to our attention.

**STATE COMMISSION ON JUDICIAL CONDUCT**

P O Box 12265
Austin TX 78711-2265

www.scjc.state.tx.us
Exhibit 6

(512) 463-5533
Toll-free (877) 228-5750



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00206-CR

RAUL VILLEGAS GARZA                                    APPELLANT

V.

THE STATE OF TEXAS                                        STATE

----------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
TRIAL COURT NO. CR12706

----------

## MEMORANDUM OPINION[1]

----------

Appellant Raul Villegas Garza appeals his conviction of and sentence for tampering with or fabricating evidence. *See* Tex. Penal Code § 37.09(a)(2) (West Supp. 2014). We modify the judgment and affirm it as modified.

---

[1]*See* Tex. R. App. P. 47.4.

## Background Facts

In 2004, Appellant was convicted on four counts of indecency with a child and sentenced to twenty years' confinement for each count, to run concurrently. During his incarceration, Appellant filed six applications for postconviction habeas relief. Appellant's sixth application was filed on February 12, 2013.

When the Hood County District Attorney, Robert Christian, received a copy of the sixth application, he noted that the application contained two affidavits that had not been included in Appellant's previous applications. One, entitled "Affidavit to Recant My False Testimony," was purportedly written by Appellant's ex-wife, Priscilla Sides, formerly known as Priscilla Kindle. The affidavit used the spelling "Priscilla Kendal" and was signed by "Priscilla Kendall." The affidavit stated that Sides had lied on the witness stand during Appellant's trial. The other affidavit was purportedly written by Dr. H. Pat Hezmall and stated that Appellant "has no capacity for sexual arousal."

On March 4, 2013, Robert Young, an investigator for the district attorney of Hood County, interviewed Appellant in prison. Young recorded the interview with both a video camera and an audiotape recorder. He gave Appellant a *Miranda* warning and asked if he would be willing to answer questions. Appellant agreed to talk. While Young was interviewing Appellant, prison guards removed all of Appellant's files and documents from his cell. The guards brought the documents to the interview room, and Young got Appellant's permission to go through them and discuss them.

2

Young interviewed Appellant for about an hour and a half, at which time Appellant asked Young to turn off the video recorder. Unaware that he was still being recorded by audiotape, Appellant confessed to making the false affidavits with the help of some other inmates.

Appellant took a break for dinner, and when he returned, Young asked him to complete a written statement regarding his confession. He also asked Appellant to sign a consent form to allow him to take the documents from the prison. At the top of the statement form, Appellant initialed that he understood his rights. The consent form also had his rights listed at the top of the page. Young took all of Appellant's documents except for a copy of a court reporter's record.

Appellant was charged with aggravated perjury and tampering with or fabricating evidence. *See id.* Before trial, Appellant filed a motion to suppress the tangible evidence removed from his prison cell and all statements he made to law enforcement officers. After a hearing, the trial court denied the motion.

Also prior to trial, Appellant filed a motion to disqualify or recuse Judge Ralph Walton, Jr. from presiding over the case. Judge Walton had represented Appellant against charges of sexual abuse of a child that were unrelated to his 2004 conviction, and Appellant claimed that he intended to call Judge Walton as a witness. Judge Jeff Walker, then presiding for the 8th Administrative Judicial Region, denied this motion after a hearing.

At trial, Priscilla testified that on the date the affidavit was signed, her last name was Sides, not Kindle, that she had never spelled Kindle as "Kendal" or "Kendall," and that she did not sign the affidavit purporting to be from her. The notaries whose stamps were on the questioned affidavits both testified that they did not notarize the affidavits.

A man named John Pizer testified that he had been assisting Appellant with his applications. He testified that he had sent Hezmall the affidavit for him to sign, but that Hezmall had never responded. Pizer stated that he eventually received the signed copy of the Hezmall affidavit and Kendall affidavit in envelopes with no return address. He did not know who mailed them to him. Pizer then filed Appellant's writ for him, using the affidavits as exhibits and signing Appellant's name.

A jury found Appellant not guilty of aggravated perjury, but guilty of tampering with or fabricating evidence, and assessed a punishment of twenty years' confinement. The trial court sentenced Appellant accordingly. Appellant then filed this appeal.

## Discussion

### 1. Motion to suppress

In his first point, Appellant argues that the trial court erred by denying his motion to suppress the evidence removed from his prison cell and the statements he made in his interview with Young. At the hearing on the motion, and again at trial, Appellant argued that he did not consent to the search of his prison cell and

4

that he was coerced into giving a false confession so that he would be allowed to keep a copy of his trial transcript.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

The State argues that Appellant did not have standing to challenge the search of his prison cell. A person has standing to contend that a search or seizure was unreasonable if (1) he has a subjective expectation of privacy in the place or object searched and (2) society is prepared to recognize that expectation as "reasonable" or "legitimate." *State v. Granville*, 423 S.W.3d 399, 405 (Tex. Crim. App. 2014) (citing *Minnesota v. Olson*, 495 U.S. 91, 95–97, 110 S. Ct. 1684, 1687–88 (1990); *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004)). The United States Supreme Court has held, "[S]ociety is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within

5

the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S. Ct. 3194, 3200 (1984). Although Appellant relies heavily on *Granville* for his standing argument, nothing in that opinion undermines the clear statement in *Hudson. See Granville*, 423 S.W.3d at 414 & n.56 (distinguishing *Hudson*). The cases Appellant cites from other jurisdictions are also irrelevant to our analysis. *See United States v. Cohen*, 796 F.2d 20, 24 (2d Cir. 1986) (holding that pre-trial detainee had an expectation of privacy within his cell sufficient to challenge an investigatory search ordered by a prosecutor); *Lowe v. State*, 203 Ga. App. 277, 278–79, 416 S.E.2d 750, 752 (1992) (same). Both *Cohen* and *Lowe* involve pre-trial detainees, not convicted prisoners as is the case here. *See Willis v. Artuz*, 301 F.3d 65, 69 (2d Cir. 2002) (distinguishing *Cohen* on ground that appellant was a convicted prisoner); *Lutz v. Collins*, No. 04-08-00496-CV, 2009 WL 330958, at *4 (Tex. App.—San Antonio Feb. 11, 2009, pet. denied) (mem. op.) (same). We overrule Appellant's first point as to the search of his prison cell and seizure of the tangible evidence.

As to Appellant's argument that his confession was the result of coercion or duress, we must give deference to the trial court's evaluation of the facts. *See Amador*, 221 S.W.3d at 673. Appellant testified that he confessed because he had been worn out from the interview. He said,

> I'd been there, and I tried to tell him the truth, several times I told him that I didn't do it, that that was not my signature, and he wouldn't believe me, and he just finally wore me down to where I was going to tell him what he wanted to hear.

6

Appellant claimed that he gave his oral confession so that he could keep his trial transcript. Yet, the entire conversation was audiotaped and having reviewed that tape, we find no promise or coercion by Young prior to Appellant's confession. Appellant later testified that Young promised that Appellant could keep his trial transcript if he provided a written statement. Appellant claimed the promise was made after Young had turned off the recording devices. Young denied that he promised Appellant anything in exchange for his confession. He testified that he left the transcript at Appellant's request and because it was not relevant to his investigation of the doctored applications.

The trial court issued findings that "beyond a reasonable doubt, without regard to the truth or falsity of said audio taped and videotaped oral statement, that the same was freely and voluntarily made and is, as a matter of law and fact, admissible as evidence before the jury in this case." The trial judge believed that Appellant had not been coerced and he was free to make that determination. *See Butler v. State*, 872 S.W.2d 227, 236 (Tex. Crim. App. 1994) ("The trial judge is sole judge of credibility of witnesses in a pretrial hearing and, absent a showing of abuse of discretion, a trial court's finding on the voluntariness of a confession will not be disturbed."). Nothing in these facts shows that the trial court abused its discretion in denying the motion to suppress the confession. We overrule the remainder of Appellant's first point.

7

## 2. Sufficiency of the evidence

In his second point, Appellant argues that the evidence is legally insufficient to support his conviction. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences

8

in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

A person commits the offense of tampering with or fabricating physical evidence if, knowing that an investigation or official proceeding is pending or in progress, he makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent to affect the course or outcome of the investigation or official proceeding. Tex. Penal Code Ann. § 37.09(a)(2). Appellant notes that the jury charge defined the offense as "intentionally or knowingly mak[ing], present[ing,] *and* us[ing] documents . . . with knowledge of their falsity and with the intent to affect the course or outcome of the official proceeding." [Emphasis added.] He argues that there is no evidence that he made, presented, *and* used false documents. However, we measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the charge actually given. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *see Crabtree v. State*, 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are determined by state law.").

Appellant claims, "John Pizer alone was the party responsible for producing, signing[,] and filing" the application containing the false affidavits. Pizer testified that he did not doctor the two affidavits. He wrote the affidavit for Hezmall, but Hezmall never returned his letters or phone calls. A copy of the

9

letter Pizer sent to Hezmall was submitted into evidence. It was dated February 17, 2011. Appellant stated in his interview that Pizer sent him copies of the drafted affidavit when he mailed it to Hezmall. Sides testified that she did not recall ever receiving a letter asking her to sign an affidavit regarding Appellant.

Pizer said that he received the Hezmall and Kendall affidavits "out of the blue" and that he did not know who mailed them. After Appellant accused him of falsifying the affidavits, Pizer wrote Appellant a letter stating,

> The affidavit from Priscilla came to me in the mail. I no longer remember where they came from[,] and if they came direct from Priscilla[,] I don't know where she got my address, but there are several possibilities. I may have written her a very long time ago, but she did not respond[,] and so I never have had any correspondence with her.

Appellant testified that he first became aware that Pizer had signed Appellant's name on the sixth application when Young came to interview him on March 4, 2013. But Appellant twice stated that on February 28, 2013, he received a copy of what Pizer had filed on his behalf. He then said he must have received it "maybe three or four days" after it was mailed. A letter from Appellant to the district court clerk, dated February 21, 2013, states that Appellant mailed the application on February 8, 2013. At trial, he explained that he said in the letter to the district clerk that he had filed the application because "everything Pizer's done, it's always had my name on the return address. And since the writ is under my name, I couldn't very well say that—Pizer's writ, so I put I mailed it off to you, so they'd be looking for my name."

10

The notary whose name appears on the Kendall affidavit testified that she had notarized a document for Vern Mason. Mason is Appellant's brother-in-law. The notary whose name appears on the Hezmall affidavit testified that she had notarized a document for Rachel Guerra. Guerra is Appellant's sister and Mason's wife. Appellant claims that the notary stamps were not in his prison files. Young, however, testified that he found multiple copies of the Mason affidavit (used to make the Kendall affidavit) and a copy of the Guerra affidavit (used to make the Hezmall affidavit) in the documents removed from Appellant's cell. Notes discussing "newly discovered evidence" from Appellant's cell reference an affidavit from "Priscilla Kendall recanting her testimony" and Hezmall. The fourth application, signed by Appellant, includes an altered letter from his trial attorney. The altered letter removed the trial attorney's statements:

> I subpoened your treating physician, and he testified from the records. . . .

> You are forgetting that at the time of the trial your sister Rachel was against us. I read her affidavit, with interest. Often, family members will be remorseful about testifying against their own kin and change their stories after trial.

Appellant filed that writ application before he had contacted Pizer.

In his taped interview, Appellant stated that he had a friend make the affidavits "because everything [he had] tried to do legally [was] cut down through the district court." He said, "I was hoping that I would get a hearing where I could bring in the other evidence that I have that wasn't used in court to prove my innocence." He said that the Kendall affidavit was made by an inmate who has

since been released. He told the inmate what to put in the affidavit, and the inmate "chopped up" the documents to affix the notary stamp to it.

Appellant told Young that he sent the fake affidavits to Pizer without telling Pizer that they were false and that Pizer filed them. He said he understood what he did was wrong and illegal. He went on, "I didn't think y'all were gonna be smart enough to look at the affidavit, I mean the notary." In his written confession, Appellant said, "I [am] sorry for making these false documents. . . . Please understand my reason, I knew it would come back and get me. . . . I know I was in the wrong for this act but[] all I was trying to get was a hearing."

The jury was free to disbelieve Appellant's statement that he received the affidavits anonymously and his statement that he received them from Pizer, who had received them anonymously. The jury was also free to disbelieve that Appellant did not intend for Pizer to file the writ or that Appellant was coerced into confessing. The jury could have believed instead that Appellant, with the aid of other inmates, fabricated the affidavits using old notary stamps found in Appellant's files and sent them to Pizer with the intent that Pizer file them with Appellant's writ application. See Waldrop v. State, 219 S.W.3d 531, 534 (Tex. App.—Texarkana 2007, no pet.) ("[T]he plain language of Section 37.09 does not require that the actor present the evidence in question directly to the investigating agency."). Viewing all of the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that Appellant made, presented, or used the affidavits with knowledge of their

12

falsity and with the intent to affect the course or outcome of the official proceeding. *See* Tex. Penal Code Ann. § 37.09(a)(2); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. We overrule Appellant's second point.

## 3. Disqualification and recusal

In his third point, Appellant argues that Judge Walton should have been disqualified or recused from presiding over the trial. Judge Walton had previously been counsel for Appellant in 1998 on an unrelated charge of sexual abuse of a child. He also presided over the underlying indecency with a child case. In his pretrial motion to disqualify or recuse Judge Walton, Appellant stated that he intended to call Judge Walton as a witness. At the hearing on the motion before Judge Jeff Walker,[2] Appellant explained that as the judge in the underlying case, Judge Walton was required to review all of Appellant's applications. Appellant argued that Judge Walton necessarily must have looked at the forged affidavits and had not noticed anything wrong with them. The following exchange then took place:

> THE COURT: That's evidence of nothing, quite frankly. I assume the State's going to bring in experts to either testify as to handwriting or they're going to bring in the supposed affiants who are going to testify, we didn't sign these.
>
> [APPELLANT'S COUNSEL]: I suppose, Your Honor.

---

[2]When a recusal motion is timely filed, rule of civil procedure 18a requires a trial judge to either recuse himself or refer the motion to the regional presiding judge to decide. *De Leon v. Aguilar*, 127 S.W.3d 1, 5 (Tex. Crim. App. 2004); *see* Tex. R. Civ. P. 18a; *see also Arnold v. State*, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993) (holding that rule 18a applies in criminal cases).

THE COURT: Neither one of those involves the judge.

At the end of the hearing, Judge Walker said,

> All right. Mr. Garza, I'm going to deny your motion for the simple reason that what you have wanted the judge to testify to probably is not admissible at the time of the hearing, and whether or not the judge thought the signatures looked funny or different or saw any problem with them, it's not an issue. The issue is, were they forged? And the judge can hear that and render a judgment based upon the evidence that he receives at that time.

Appellant first argues that Judge Walton was statutorily disqualified under the code of criminal procedure. Article 30.01 states,

> No judge or justice of the peace shall sit in any case where he may be the party injured, or where he has been of counsel for the State or the accused, or where the accused or the party injured may be connected with him by consanguinity or affinity within the third degree, as determined under Chapter 573, Government Code.

Tex. Code Crim. Proc. art. 30.01 (West 2006).

The portion of the statute that disqualifies a judge when "he has been counsel for . . . the accused" requires "an affirmative showing that the judge actually acted as counsel in the very case before him." *Gamez v. State*, 737 S.W.2d 315, 319 (Tex. Crim. App. 1987). The only evidence in the record is that Judge Walton had previously been Appellant's counsel in an unrelated matter. Such previous representation did not disqualify him from presiding over the present case. *See Kuykendall v. State*, 335 S.W.3d 429, 432 (Tex. App.— Beaumont 2011, pet. ref'd) ("A judge is not disqualified simply because he has

14

prosecuted or defended the accused in past cases." (citing *Hathorne v. State*, 459 S.W.2d 826, 829 (Tex. Crim. App. 1970))).

Appellant also appears to argue that Judge Walton was his victim of the charged offense. The court of criminal appeals interpreted the phrase "may be the party injured" to mean that a judge is disqualified "if the evidence shows that he was among the defendant's victims in the criminal transaction or episode at issue, such that a reasonable person would harbor doubts as to the judge's impartiality." *Whitehead v. State*, 273 S.W.3d 285, 289 (Tex. Crim. App. 2008). Appellant's argument is presumably based on the belief that Judge Walton was a victim because as the presiding judge over the underlying indecency case and associated postconviction proceedings, he read the false affidavits and was perhaps tricked into believing in their authenticity. Yet there is no evidence that Judge Walton believed the affidavits to be true or that reading them caused him any injury.[3] *See Lane v. State*, 634 S.W.2d 65, 66 (Tex. App.—Fort Worth 1982, no pet.) ("When perjury is committed in a judicial proceeding, it is the administration of justice that suffers the offense, not the person or property of the trial judge."). Judge Walton was not Appellant's victim in any sense that would disqualify him from presiding over the perjury trial. *See id.* (holding that the trial judge in front of whom perjury was committed was not disqualified from hearing the subsequent perjury trial).

---

[3]Judge Walton denied Appellant's writ application prior to the hearing on Appellant's motion to recuse or disqualify him.

Appellant also argues that Judge Walton should have been recused under rule 18b(b)(1) of the rules of civil procedure. *See* Tex. R. Civ. P. 18b(b)(1). We review the denial of a motion to recuse under an abuse of discretion standard. Tex. R. Civ. P. 18a(j)(1)(A). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620. Nor does a mere error in judgment rise to an abuse of discretion. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

We apply a reasonable person standard in determining whether a recusal motion should have been granted. *Duffey v. State*, 428 S.W.3d 319, 325 (Tex. App.—Texarkana 2014, no pet.) (citing *Woodruff v. Wright*, 51 S.W.3d 727, 736 (Tex. App.—Texarkana 2001, pet. denied)). The question is whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge's conduct, would have a reasonable doubt that the judge is actually impartial. *Id.* (citing *Rogers v. Bradley*, 909 S.W.2d 872, 881 (Tex. 1995)). Accordingly, the need for recusal is triggered only when a judge displays an "attitude or state of mind so resistant to fair and dispassionate

16

inquiry" as to cause a reasonable member of the public to question the objective nature of the judge's rulings. *Ex parte Ellis*, 275 S.W.3d 109, 117 (Tex. App.—Austin 2008, no pet.) (quoting *Liteky v. U.S.*, 510 U.S. 540, 557–58, 114 S. Ct. 1147, 1158 (1994) (Kennedy, J., concurring)).

Courts enjoy a "presumption of judicial impartiality" that "is not defeated by the mere assertion of bias based on a trial judge's previous judicial relationship with a defendant." *Abdygapparova v. State*, 243 S.W.3d 191, 198 (Tex. App.—San Antonio 2007, pet. ref'd) (citing *Durrough v. State*, 620 S.W.2d 134, 143 (Tex. Crim. App. 1981)). The movant bears the burden of proving that recusal is warranted, and it is a high one. *Id.* That burden is only satisfied when the movant provides facts demonstrating the presence of bias or partiality "of such a nature and extent as to deny the movant due process of law." *Ellis*, 275 S.W.3d at 117.

As recited above, Judge Walker explained that he denied Appellant's motion for recusal because he did not believe that Judge Walton's history with Appellant would bear on any of the issues to be determined in the perjury trial. Again, a previous judicial relationship with a defendant does not defeat the presumption of judicial impartiality unless there is a reason to believe that the judge has closed his mind to fair and dispassionate inquiry. *Ellis*, 275 S.W.3d at 117; *Abdygapparova*, 243 S.W.3d at 198–99. Judge Walker's ruling that Appellant had not met his burden of demonstrating Judge Walton's impartiality

17

was not outside the zone of reasonable disagreement and was therefore not an abuse of discretion. We overrule Appellant's third point.

## 4. Attorney's fees and costs

In his fourth point, Appellant argues that the trial court erred by ordering him to pay attorney's fees and costs. The trial court ordered that Appellant pay $11,316.27 in court costs, $10,880.27 of which was for attorney's fees.

The State agrees that the trial court erred in assessing the attorney's fees against Appellant because he was indigent. *See Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010) ("[A] defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees."). A trial court can order a defendant to pay in part or in whole the costs of the legal services provided to him if the court determines that the defendant has the financial resources that enable him to pay. Tex. Code Crim. Proc. art. 26.05(g) (West Supp. 2014). However, "[a] defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs." *Id.* art. 26.04(p) (West Supp. 2014). Appellant was incarcerated throughout the trial, was represented by court-appointed counsel at trial and on appeal, and there was no evidence of any material change in his financial circumstances. We therefore agree that trial court erred by assessing attorney's fees as costs against Appellant, and we sustain that portion of Appellant's fourth point.

18

*See Vogt v. State*, 421 S.W.3d 233, 246 (Tex. App.—San Antonio 2013, pet. ref'd) (holding that trial court erred by assessing attorney's fees against defendant when record showed that court-appointed counsel represented defendant at trial and on appeal).

The State disagrees, however, that the remaining $436 in court costs were erroneously assessed against Appellant. A trial court can order an indigent defendant to pay court costs provided payment is not demanded before the trial court proceedings have concluded. *Allen v. State*, 426 S.W.3d 253, 259 (Tex. App.—Texarkana 2013, no pet.); *see also Williams v. State*, 332 S.W.3d 694, 700 (Tex. App.—Amarillo 2011, pet. denied) (holding that legislatively mandated court costs are "properly collectable by means of a withdrawal notification regardless of a defendant's ability to pay"). Appellant does not argue that any of the fees assessed against him are not legislatively mandated.[4] Thus, we overrule Appellant's fourth point to the extent that it challenges the court costs other than the attorney's fees.

---

[4]The Bill of Costs lists the following fees assessed against Appellant: Capias Warrant Fee, Clerk's Fee, Consolidated Court Costs Fee, Courthouse Security Fee, Criminal E-Filing Conviction Fee, Criminal Technology Fee, Indigent Defense Services Fee, Judicial Support Fee, Jury Reimbursement Fee, Jury Trial Fee, Records Management and Preservation Fee, Restitution Fee, Summoning Witness Fee, and Time Payment Fee. *See* Office of Court Admin., *District Clerk's Felony Court Cost Chart* (Sept. 1, 2013), http://www.txcourts.gov/media/681164/dc-felctcst090113.pdf (listing fees that may be assessed and the statutes mandating them).

## Conclusion

Having sustained the portion of Appellant's fourth point regarding the assessment of attorney's fees against him, we modify the judgment and bill of costs to delete the assessment of $10,880.27 in attorney's fees. Having overruled Appellant's first three points and the remainder of his fourth point, we affirm the trial court's judgment as modified.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: DAUPHINOT, GARDNER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 28, 2015

20